SAM LEVY & CO. *v.* MRS. JAMES DAVIS *et al.*

(*Nashville.* December Term, 1911.)

1. **EXEMPTIONS.** Of life insurance from debts of husband does not exempt same from wife's debts, when.

Under our statutes (Shannon's Code, sections 4231 and 4232), providing merely that the proceeds of a policy of insurance on the husband's life shall be exempt from liability for his debts, and having no reference to the debts of the wife herself, insurance funds received by the widow from a policy on her deceased husband's life are not exempt from debts contracted by her and for which she is personally liable. (*Post, p.* 345.)

Code cited and construed: Secs. 4231, 4232 (S.); secs. 3335, 3336 (M. & V.); secs. 2478, 2479 (T. & S. and 1858).

2. **SEPARATE ESTATE.** Wife's interest in husband's life insurance policy is her separate estate.

The interest of a wife in policy of insurance on her husband's life is her separate estate. (*Post, p.* 345.)

Case cited and approved: Hughey v. Warner, 124 Tenn., 725.

3. **STATUTES.** Must be construed so as to give every word and phrase some meaning.

In construing a statute, the courts must, if possible, give every word and phrase some meaning. (*Post, p.* 348.)

Case cited and approved: Doty v. Telephone Co., 123 Tenn., 329.

4. **SEPARATE ESTATE.** May be subjected to debts contracted by a married woman in mercantile or manufacturing business; unmarried woman cannot hold a separate estate as such.

A married woman's separate estate cannot, without an express agreement, be subjected to her general indebtedness, or debts

Levy v. Davis.

not contracted in her conduct of a mercantile or manufacturing business; but under the statute (Acts 1897, ch. 82), providing that a married woman engaged in the mercantile or manufacturing business shall be liable for the debts incurred therein, as if she were a *feme sole*, her liability in the specific instance is the same as though she were unmarried, and her separate estate held by her without any limitation upon her power of disposition may be subjected to her such debts; and as an unmarried woman can hold no separate estate as such, a sum due a widow on a policy on the life of her deceased husband may be subjected to debts contracted in the course of trade, while she was living with her husband and engaged in mercantile business in her own name, without a special contract subjecting it to such debts.  (*Post, pp.* 346-350.)

Code cited and construed:  Sec. 4505 (S.); sec. 3505 (M. & V.); sec. 2805 (T. & S. and 1858).

Acts cited and construed:  Acts 1897, ch. 82.

Cases cited and approved:  Yeatman v. Bellmain, 6 Lea, 488; Persica v. Maydwell, 102 Tenn., 207.

Cases cited and distinguished:  Chatterton v. Young, 2 Tenn. Chy., 771; Federlicht v. Glass, 13 Lea, 481; Jordan v. Keeble, 85 Tenn., 417; Theus v. Dugger, 93 Tenn., 41; Woodfolk v. Lyon, 98 Tenn., 269.

FROM MONTGOMERY.

Appeal from the Chancery Court of Montgomery County.—J. W. STOUT, Chancellor.

AUSTIN PEAY, and SAVAGE & FORT, for complainants.

F. G. GILBERT and H. N. LEECH, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

Referring to the bill herein, in so far as it relates to the questions discussed in this opinion, its averments are:

From March, 1909, until the spring of 1910, Mrs. James Davis was engaged in the mercantile business in Clarksville. She was a married woman, living with her husband. During this period, while living with her husband and while engaged in trade, she became indebted to the complainants for goods bought from them for use in the conduct of her business.

Prior to this time her husband took out a policy of insurance in her favor for $2,000. He has since died. For the satisfaction of their claim against her for goods sold to her while she was in business, the complainants seek to reach the proceeds of this policy of insurance, and have filed their bill, making Mrs. Davis and the insurance company defendants.

A demurrer to this bill was filed, one of the grounds of which was:

"The bill shows that the debts alleged in the bill as owed by the defendant are general debts, and that the funds sought to be reached and subjected to the satisfaction of said alleged general debts are derived from, and are the proceeds of, a life insurance policy on the life of the deceased husband of this defendant, in which policy she was named as the beneficiary.

"Said life insurance is exempt to her, under the statute laws of the State of Tennessee, is her separate prop-

erty, under the laws of this State, and is not liable to the satisfaction of the debts claimed in the bill."

This demurrer was sustained by the chancellor, and from his decree an appeal was taken to this court.

It should first be observed that the debts to which the proceeds of this policy are sought to be subjected are the debts of the wife, and not the debts of the husband. Therefore the funds collected from the policy are not exempt, under sections 4231 and 4232 of Shannon's Code. These statutes merely provide that the proceeds of a policy on the husband's life shall be exempt from his debts, and have no reference to the debts of the wife herself.

So that, if the sum realized from this policy is exempt from these debts of Mrs. Davis, it must be so held, because said fund is her separate estate, and not by force of the statutes relating to insurance on the husband's life.

It may be conceded that the interest of Mrs. Davis in this policy is her separate estate. This question has been considered several times by this court, and it has been uniformly held that such a policy of insurance on the life of a husband, payable to the wife, is her separate estate. *Hughey* v. *Warner,* 124 Tenn., 725, 140 S. W., 1058, and cases there cited.

These mercantile debts of Mrs. Davis were incurred by her while engaged in business, without any special contract on her part to bind her separate estate for the payment thereof. It is insisted, therefore, in her behalf, that under the well-settled rule in this State this fund,

being her separate estate, cannot be held liable for these debts, in the absence of an express contract by her to this effect.

Undoubtedly, if she had not been engaged in mercantile or manufacturing business, or had she contracted a general indebtedness otherwise than in such business, her separate estate could not be subjected to its payment without an express agreement on her part that it might be so held. This principle is too familiar to require citation of authority.

It remains, however, to consider in this case the effect of chapter 82 of the Acts of 1897. That act is as follows: "An act to be entitled an act to define the liability of married women on their contracts, when engaged in the mercantile or manufacturing business.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that when married women are engaged in the mercantile or manufacturing business in their own names, or by an agent, or as partner, they shall be liable for the debts incurred in the conduct of such business, as if they were *femme sole,* and no plea of coverture shall avail in such cases."

This act, it will be seen, declares that a married woman engaged in business shall be liable for the debts created in such business, as if a *femme sole.* It is said that, regarding her as *femme sole,* she could not hold property as a separate estate, and all the property to which she had title would accordingly be liable for her mercantile debts, whether such property was acquired as a general estate or to her separate use.

Levy v. Davis.

To the contrary, it is urged on behalf of Mrs. Davis that, properly construed, this act has no such meaning as complainants ascribe to it.   It is insisted that the intention of the act was only to take away the defense of coverture from a married woman engaged in the mercantile or manufacturing business; that the act prevents her from purchasing goods and escaping liability for their value because she is a married woman; that judgment can be rendered against her by reason of the act; but that such judgment stands on the same plane as any other judgment which might have been obtained against her in the absence of the statute, had she failed upon suit to interpose a plea of coverture.   We are referred to the cases holding that judgments against married women cannot be satisfied out of their separate estates, unless the claims upon which the judgments were based were charges against such separate estate.   *Woodfolk* v. *Lyon,* 98 Tenn., 269, 39 S. W., 227; *Chatterton* v. *Young,* 2 Tenn. Ch., 771; *Jordan* v. *Keeble,* 85 Tenn., 417, 3 S. W., 511.

This is a plausible construction of the statute, but we cannot agree that it is the true construction.   In fact, such a construction omits from the statute an entire phrase, to wit:   "As if they were *femme sole*."

Learned counsel for Mrs. Davis interpret the act as if it read, married women "shall be liable for the debts incurred in the conduct of such business,  . . .  and no plea of coverture shall avail in such cases."   They do not take into account the important words, "as if they were *femme sole*," used to indicate the character of lia-

bility imposed upon married women engaged in business.

The act undoubtedly renders a married woman engaged in business liable to judgment for her mercantile debts. It has been so held in *Persica* v. *Maydwell,* 102 Tenn., 207, 52 S. W., 145. Such, however, is not the extent of the act, unless we elide the pointed phrase heretofore referred to. It is the duty of the court, in construing a statute, if possible, to give every word and phrase some meaning. *Doty* v. *Telephone, etc., Co.,* 123 Tenn., 329, 130 S. W., 1053. There is no justification in authority or reason for omitting or excluding a phrase such as this one, in determining the meaning of this statute.

The act is entitled, "An act to define the liability of married women" as to certain contracts of theirs; that is to say, the purpose of the act is to declare in what manner, and how, married women shall be held in reference to certain of their obligations. The plainest language of the statute is that, with reference to debts incurred by them in the conduct of a mercantile or manufacturing business, they shall be held liable "as if they were *femme sole.*"

The six words just quoted constitute the dominant phrase of the entire passage. More clearly and strongly than any other language used do they express the legislative intent. There is no escape from the force of these words, and, if effect be given them, the conclusion we herein reach is inevitable.

The act means, not only what defenant's counsel assert, but it means more. It means, not merely that mar-

ried women in business are liable to judgment on the debts, but it means, also, that their property shall be liable for these debts in every way, just as if they were unmarried women.

An unmarried woman, as a matter of course, can hold no separate estate as such. All her property to which she has title is subject to her debts.

If we are to treat married women, in respect to their business obligations, when they engage in trade, as *femmes sole,* it follows that, as to debts so incurred, they hold their property just as if they were unmarried, and it is not necessary for them to enter into any especial contract to bind this property for their obligations of this character in order to render it liable, even though it was acquired by them as separate estate.

We can arrive at no other conclusion without ignoring or giving an unnatural construction to chapter 82 of the Acts of 1897.

In speaking of the liability of the wife's separate estate under the statute, we are to be understood as referring only to property over which she has full control. We are not here called upon to express an opinion as to the effect of the statute where there is a limitation upon the *jus disponendi.*

The decisions in this State have gone to great lengths to protect the separate estates of married women engaged in business. We think this act was passed to meet the holdings of the court in *Theus* v. *Dugger,* 93 Tenn., 41, 23 S. W., 135; *Federlicht* v. *Glass,* 13 Lea, 481, and other cases. These decisions, while perhaps the logical

Levy v. Davis.

result of the rule established in Tennessee at an early date, nevertheless appeared to work hardship and injustice in many instances. It is not surprising that the legislature should have attempted to make a change in the law by this act. It would be indefensible for this court to cripple the act by placing upon it the narrow construction urged in behalf of defendant.

Our construction of this statute is in entire harmony with the construction formerly given by this court to a somewhat similar statute respecting married women who have been abandoned or deserted by their husbands.

In *Yeatman, Shields & Co.* v. *Bellmain,* 6 Lea, 488, a bill was filed to reach a separate estate of the defendant who had been deserted by her husband and was conducting a millinery business in Nashville. Shannon's Code, section 4505, provides:

"Where a husband has deserted his family, the wife may prosecute or defend in his name any action which he might have prosecuted or defended. She may also sue and be sued in her own name, for any cause or action accruing subsequent to such desertion."

Construing this statute, the court was of opinion that there was no doubt as to the liability of the separate estate of defendant for debts incurred by her in the conduct of her business.

This case we think to be directly in point here and a sound authority to reinforce our construction of the act of 1897.

Other matters arising in this case have been disposed of orally. The decree of the chancellor will be reversed, and the case remanded for answer.