**STATE of Tennessee, Appellee,**

v.

**Frank Lewis HULLUM, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 3, 1983.

Permission to Appeal Denied by Supreme Court Feb. 2, 1984.

Edward Witt Chandler, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Ann Lacy Johns, Asst. Atty. Gen., Nashville, Dan L. Newsom, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

TATUM, Judge.

The defendant, Frank Lewis Hullum, Jr. was convicted of armed robbery and sentenced to a term of 10 years in the State penitentiary. On this appeal, he says that the evidence is insufficient to support the verdict, that his detention and arrest were illegal, that there was a fatal variance between the indictment and the proof, that identification testimony was incompetent, and that the identification evidence of a pistol was incompetent. We find no reversible error and affirm the judgment of conviction.

We first address the issue attacking the sufficiency of the evidence. The evidence accredited by the jury established that on the evening of January 13, 1982, the defendant robbed a Union 76 Self-Service Mart located at the intersection of Poplar and Willett in Memphis. Launa Cotton, an employee of the store, testified that the defendant entered, obtained a can of Miller Lite beer and brought it to her. The defendant gave her a $1.00 bill for the beer and when she hit the cash register, the defendant pulled a gun from his waist and pointed it at her chest. The defendant took approximately $150.00 in currency from the cash register. After ordering Ms. Cotton to lie on the floor, he walked out of the store taking the money and the can of beer with him. Ms. Cotton observed the defendant running down Willett Street, behind the store. She activated the store alarm system.

Within five minutes, police arrived and Ms. Cotton gave the officers a description of the gunman, including his clothing. In about five minutes, two officers arrived with the defendant and Ms. Cotton identified him as the robber. She also stated that a pistol shown to her appeared to be the one used by the defendant in the robbery. The gunman did not appear to have been intoxicated.

Other evidence established that Patrolmen Martin and Leverne of the Memphis Police Department were on patrol duty that night. At approximately 6:00 o'clock P.M., they observed an automobile parked on Willett Street on its approach to Poplar. It was stopped in the middle of the street with its lights off. The officers initially thought that it might be a vehicle disabled by snow and ice and they intended to offer assistance to the operator, since the vehicle had the street blocked. As the patrol car got close, the vehicle's lights came on and it drove away. There were two black persons in the automobile. The automobile had no license plates.

The officers were preparing to turn the patrol car around to check the vehicle, when they observed the defendant running on the east side of Willett from the Union 76 parking lot, going south. When the individual observed the officers, he slowed to a walk. His right hand was inside his jacket and he held an aluminum can in his left hand, it was later determined that this was an unopened Miller Lite beer can.

The officers stopped the patrol car in the middle of the street and got out of it. One of the officers asked the pedestrian to stop, but he continued to walk. The officer again directed the man to stop and he did

stop after going an additional 10 to 15 feet. The pistol, identified by the victim as being like the one used by the robber, was found at this spot. The officers did not see the man drop the pistol, but were concerned about weapons because the individual had his right hand in his jacket. This was a high crime area. They decided to "frisk" the defendant.

While the frisk was in progress, the officers received an armed robbery call on their radio advising that the Union 76 service station at Poplar and Willett had just been robbed. As stated, they had just observed the defendant running from the parking lot of this service station. A broadcast of the clothing and physical description of the robber matched that of the defendant so they placed the defendant under arrest and advised him of his Miranda rights. They searched the defendant and found $150.00 in paper currency and coins. They then searched the area and found the .38 caliber Colt revolver in the snow-covered grassy strip between the curb and the sidewalk. The officers took the defendant to the Union 76 service station, which was approximately 75 yards away, and the victim positively identified the defendant as the robber, and also the pistol. Both officers testified that the defendant did not appear to have been drinking.

Later, Sargeant Richard L. True obtained a statement from the defendant in which the defendant admitted going to the store or service station, and, after selecting and paying for a beer with a $1.00 bill, snatched the money from the cash register when the clerk opened it. In the statement, the defendant admitted dropping the pistol on the ground when he was stopped by the arresting officers. He also stated that during the robbery, his pistol was stuck in the waist of his pants and he did not point it at the store clerk. Sargeant True testified that the defendant did not appear to be intoxicated. Officer Johnson, who answered the call to the store and broadcast the facts concerning the robbery, saw the defendant when the arresting officers brought him to the store. Sargeant Johnson also testified that the defendant was not intoxicated.

The defendant testified that he went to his sister's home that morning and remained there during the day drinking beer and playing cards. They also drank liquor. The defendant testified that he walked away from his sister's house to a friend's house and went by the Union 76 station. He testified that he went into the station and purchased a beer and grabbed the money from the cash register. He denied having a pistol and denied telling the police that he had a gun stuck in the waist of his jeans. The defendant's mother, sister and another witness corroborated the defendant's testimony to the effect that he was intoxicated.

■ The evidence of the defendant's guilt is overwhelming. He admitted committing a robbery but denied that it was accomplished with a firearm. This testimony is rebutted by that of the victim, whose testimony was corroborated by the police officers and the pretrial admission of the defendant. The jury resolved this fact issue in favor of the State. Likewise, the issue of whether the defendant was incapable of entertaining specific intent due to intoxication was resolved in favor of the State. There was sufficient evidence upon which a reasonable trier of fact could be convinced of the defendant's guilt beyond a reasonable doubt. We must therefore overrule this issue. Rule 13(e), T.R.A.P.

■ The defendant next contends that his constitutional rights were violated when police officers detained him for investigative purposes, and, subsequently, arrested him, searching both his person and the surrounding area. It is axiomatic that investigative detentions may be made by police officers, based upon reasonable suspicion which is supported by specific and articulable facts. See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Hughes v. State,* 588 S.W.2d 296 (Tenn.1979); *State v. McLennan,* 503 S.W.2d 909 (Tenn.1973). The totality of circumstances, detailed above, in which officers Martin and Leverne observed the defendant running from the parking lot toward the point where the

unusual acting automobile was stopped, are sufficient facts upon which to objectively base a reasonable suspicion. The officers were authorized initially to detain the defendant and frisk him. When the officers received the information, during the "frisking" procedure, of the fact that the Union 76 store had been robbed, together with the description of the robber as matching that of the defendant, we have no hesitancy in saying that probable cause existed for the arrest. The search incident to the arrest was lawful. In this connection, we also observe that the defendant had no reasonable expectation of privacy with regard to the pistol found on the public street.

The defendant next complains of the "one-on-one show-up" when the police officers went to the Union 76 store with the defendant immediately after his arrest. This issue was rendered moot when the defendant took the stand and testified that he was in the store and committed the robbery. There was no issue of identification; only that of whether the defendant was armed and capable of entertaining specific intent. This issue is overruled on the authority of *Jordan v. State,* 467 S.W.2d 840, 841 (Tenn.Cr.App.1971).

In the next issue, the defendant claims that there are fatal variances between the indictment and the proof. The rule regarding material variances in indictments has been stated by our Supreme Court as follows:

> "It is the universal rule that a variance between pleading and proof in a criminal case is not material—where the variance is not of a character that would have misled the defendant at trial. *Brown v. State,* 186 Tenn. 378, 210 S.W.2d 670, 675 (1948)."

The indictment identifies the victim as "Laura" Cotton, and the proof was that the victim's name was "Launa" Cotton. This is not such variance as would mislead the defendant at trial or otherwise prejudice the defendant.

The indictment charges that the defendant took one can of beer and a sum of money, all under the value of $200. The defendant says that his motion for acquittal should have been sustained in the trial court because the proof reflected that he paid for the beer before taking the money. This question is likewise moot since the proof is undisputed that he did take and carry away a sum of money as charged in the indictment. Any variance with respect to the beer was not material.

Finally, the defendant says that the court should have sustained his objection to the testimony of the victim that the gun found on the street when the defendant was arrested, "appeared" to be the gun used by the robber. The defendant insists that this evidence was not admissible because the witness could not identify it with mathematical certainty by the use of "identifying marks, characteristics, or serial numbers." There is no merit in this contention; the evidence that the defendant had a pistol with the same appearance as that used by the robber is a circumstance to be considered by the jury.

The judgment of the trial court is affirmed.

WALKER, P.J., and JAMES C. BEASLEY, Special Judge, concur.