## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **TENNESSEE REAL ESTATE COMMISSION,** | ) |
| | ) |
| Plaintiff/Appellee, | ) **Davidson Chancery No. 96-3330-III** |
| | ) |
| **VS.** | ) **Appeal No. 01A01-9707-CH-00320** |
| | ) |
| **THOMAS HOWARD HAMILTON, ET AL,** | ) |
| | ) |
| Defendants/Appellants. | ) |

**FILED**

**May 29, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

**ALFRED H. KNIGHT**
**WILLIS & KNIGHT**
Nashville, Tennessee
Attorney for Appellants

**JOHN KNOX WALKUP**
**ATTORNEY GENERAL & REPORTER**
**CHRISTINE LAPPS**
**ASSISTANT ATTORNEY GENERAL**
Nashville, Tennessee
Attorney for Appellee

**J. RUSSELL FARRAR**
**PAUL D. CAVER, JR.**
**FARRAR & BATES, L.L.P.**
Nashville, Tennessee
Attorneys for *Amicus Curiae* Tennessee Association of Realtors

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Defendants/Appellants, Thomas H. Hamilton and Jeanette Hamilton individually and d/b/a LeConte Chalet Rentals and LeConte Chalet Rentals, Inc. ("LeConte") (collectively "defendants"), appeal the judgment of the trial court enjoining them from, *inter alia*, soliciting, representing, or promoting the overnight rental of chalets or cabins and the undertaking to rent, license the occupancy of, or lease such chalets or cabins. For reasons stated hereinafter, we affirm the judgment of the trial court.

The essential facts of this action are not in dispute. LeConte is located in Gatlinburg, Tennessee. It is owned by Jeanette Hamilton, who was in the business of managing and renting vacation chalets and cabins for numerous individual owners. Thomas Hamilton, Jeanette's husband, was an affiliate real estate broker working for LeConte. At the time the plaintiff, Tennessee Real Estate Commission ("Commission"), initiated this action against defendants, they were handling the property of at least sixty people.

The Commission first initiated proceedings against Thomas Hamilton in June of 1994. The charges levied against him emanated from his conduct while employed as a broker at LeConte. After a hearing before the Commission, Thomas Hamilton's real estate license was revoked for violations of Tenn. Code Ann. § 62-12-312(b). Among the violations cited by the Commission included making willful and substantial misrepresentations when marketing chalets, failing properly to document the receipt of checks, failing properly to account for monies coming into LeConte's possession, handling all escrow and operating accounts without supervision by a principal broker and advertising without the approval or direction of the principal broker.

Due to Thomas Hamilton's affiliation with LeConte, the Commission assessed charges against LeConte that were closely connected to the charges levied against Thomas Hamilton. The charges brought against LeConte were founded upon an audit conducted by the Commission. The allegations against LeConte mirrored many of those levied against Thomas Hamilton. They included making substantial and willful

2

misrepresentations, using misleading or untruthful advertising, and failing to account for funds coming into its possession. In resolution of these charges, LeConte entered an Agreed Order with the Commission surrendering its firm license.

Despite the revocation and surrendering of Thomas Hamilton's and LeConte's licenses, LeConte continued with its business. Consequently, the Commission sought an injunction against defendants and initiated the suit which is the subject of this appeal. At the hearing for the temporary injunction, the defendants claimed that they were no longer subject to licensure. Indeed, the defendants asserted that they exempted themselves from the Licensing Act by requesting their clients to grant them powers of attorney. LeConte was granted numerous powers of attorney authorizing it to act on behalf of the grantors as follows:

> My attorney in fact shall have the full authority to do all things necessary to care for, manage, exploit and otherwise oversee Grantor's real property located at . . . in Sevier County, Tennessee, (the "Property") including, but not by way of limitation, the following:
>
> (a) To exercise, do, or perform any act, right, power, duty, or obligation whatsoever the Grantor now has or may acquire the legal right, power, or capacity to exercise, do, or perform in connection with, arising out of, or relating to ownership, management or use of the Property with a view towards generating income from the use of the Property. My attorney is specifically authorized and directed to make the property available to and to rent the Property to third persons and to do all things incident thereto including collecting, accounting for, and making periodic remittances to me for income generated from the use of the Property.
>
> (b) To enter into and upon the Property and to maintain, let, and manage same or any part thereof.

Defendants have relied on these documents as their defense to the Commission's assertion that they were operating a business in violation of state law. Defendants assert that because they had acquired these powers of attorneys from the individual owners, they were now exempt from licensure under Tenn. Code Ann. § 62-13-104(2).

The Chancellor disagreed and granted the injunction making the following findings of fact in pertinent part:

3

(4) The business or vocation of LeConte is overseeing the real property interest of principals who own vacation and resort chalets and cottages in and near Gatlinburg, Tennessee. When otherwise not in use by the principals, the properties are taken care of by LeConte and LeConte rents the properties at the request of the principals. For these services, LeConte receives a fee.

(6) The power of attorney form reserves to LeConte full authority "to do all things necessary to care for, manage, exploit and otherwise oversee Guarantor's real property" including "any act . . . relating to ownership, management or use of the Property with a view towards generating income from use of the Property."

(7) The form also contains a provision on compensation for LeConte's services. The form provides, "My attorney in fact, and any successors, shall be compensated for services rendered at a rate equal to 40% of the gross receipts that my attorney generates from the use of the property."

Consequently, the Chancellor ordered the defendants not to engage in any of the following activities:

1. Supervising, directing, managing, owning or controlling any licensed real estate firm in the State of Tennessee without a license.

2. Supervising, directing, managing, owning or controlling any non-licensed real estate firm in the State of Tennessee.

3. Soliciting, representing, or promoting the sale, exchange, purchase, lease or option to buy or sell any real property for a fee, commission, finders fee or other valuable consideration in the State of Tennessee.

4. The undertaking by or on behalf of the owner or owners of lots or other parcels of real estate, at a salary, fee, commission, or any other valuable consideration, to sell or lease such real estate or any part thereof, in lots or parcels or other disposition thereof in the State of Tennessee.

5. Engaging in the business of charging an advance fee or contracting for the collection of a fee in connection with any contract whereby the primary purpose is to promote the sale or lease of real estate either through its listing in a publication issued primarily for such purpose, or for a referral of information concerning such real estate to brokers or both.

6. The solicitation, representation, or promotion of the overnight rental of chalets or cabins and the undertaking to rent, license the occupancy of, or lease such chalets or cabins.

7. Engaging in any activities that fall within the definition of a "broker" as stated in T.C.A. § 62-13-102, as more particularly described in this Court's memorandum and order.

8. Defendants are permanently enjoined from performing or engaging in any of the activities identified in paragraphs 1

4

through 7, even if they purport to do so for a fee under the authority of a power-of-attorney.

This appeal ensued. The essential issues presented to this court for review are as follows:

> 1. Are the defendants, whose business is managing, renting, and collecting rents for vacation chalets and cabins for a fee on behalf of private owners, required to be licensed under the Tennessee Real Estate Broker License Act, Tenn. Code Ann. § 62-13-101 *et seq.*?
>
> 2. Did the chancery court properly issue a permanent injunction against the defendants, who are no longer licensed real estate brokers, requiring them to cease any and all activities defined as real estate brokering, thereby rejecting the defendants' claim (a) that they are entitled to an exemption from the Licensing Act under Tenn. Code Ann. § 62-13-104(2) and (b) that they can, therefore, continue their real estate business pursuant to the authority given them in the powers of attorney executed by their clients?

Since we are reviewing a finding of fact by the trial court, we must conduct our review *de novo* upon the record, accompanied by a presumption of the correctness of the findings of the trial judge. We may reverse only if the evidence preponderates against the finding of the trial judge. Tenn. R. App. P. 13(d).

### Are the defendants, whose business is managing, renting, and collecting rents for vacation chalets and cabins for a fee on behalf of private owners, required to be licensed under the Tennessee Real Estate Broker License Act, Tenn. Code Ann. § 62-13-101 *et seq.*?

Tenn. Code Ann. § 62-13-102(3)(A) provides:

> (3)(A) "Broker" means any person who for a fee, commission, finders fee or any other valuable consideration, or with the intent or expectation of receiving the same from another, solicits, negotiates or attempts to solicit or negotiate the listing, sale, purchase, exchange, lease or option to buy, sell, rent or exchange for any real estate or of the improvements thereon or any time-share interval as defined in the Tennessee Time-Share Act, compiled in title 66, chapter 32, part 1, collects rents or attempts to collect rents, auctions or offers to auction, or who advertises or holds out as engaged in any of the foregoing.

The language within of the "Special Power of Attorney" form filled out by property owners states in pertinent part:

> (a) . . . [m]y attorney is specifically authorized and directed to make property available to and to rent the Property to third

5

persons and to do all things incident thereto including collecting, accounting for, and making periodic remittances to me for income generated from the use of the Property.

5. **COMPENSATION.** My attorney in fact, and any successors, shall be compensated for services rendered at a rate equal to forty percent (40%) of the gross receipts that my attorney generates from the use of the Property.

After a careful review of the record in the case before us, it is undisputed the defendants were authorized to collect rents from the properties that they were managing under their special powers of attorney. Also undisputed in the record is the fact that defendants did, in fact, collect rents from tenants of the chalets and/or cabins and received compensation of 40% of the gross receipts that the defendants generated from the use of said chalets and cabins. As such, defendants, for a fee, collected or attempted to collect rents and are thereby conducting themselves in a manner subject to licensing under the Tennessee Real Estate Broker Licensing Act. Accordingly, we affirm the finding of the Chancellor that defendants' actions fell within the confines of Tenn. Code Ann. § 62-13-102(3)(A).[1]

**Did the chancery court properly issue a permanent injunction against the defendants, who are no longer licensed real estate brokers, requiring them to cease any and all activities defined as real estate brokering, thereby rejecting the defendants' claim (a) that they are entitled to an exemption from the Licensing Act under Tenn. Code Ann. § 62-13-104(2) and (b) that they can, therefore, continue their real estate business pursuant to the authority given them in the powers of attorney executed by their clients?**

Defendants contend that their conduct is exempt from the licensing requirements of the Tennessee Real Estate Broker License Act. Specifically, defendants claim that they are exempt from the act's licensing requirement pursuant to the attorney-in-fact exemption, codified at Tenn. Code Ann. § 62-13-104(2) (1997). As mentioned *supra*, the trial court rejected this argument finding that the defendants' acts did not fall within this licensing exemption of the Act. Tenn. Code Ann. § 62-13-104(2) provides:

The provisions of this chapter do not apply to:

(2) An attorney-in-fact under a duly executed and recorded power of attorney from the owner or lessor;

___

[1]We note that both parties discuss at length whether defendants' efforts to "rent" chalets and cabins fell within the meaning of Tenn. Code Ann. § 62-13-102(3)(A). In light of the foregoing discussion, it appears that defendants did "collect rents" and thus fell under the ambit of the statute.

The terms "attorney-in-fact" and "power of attorney" are not defined in the Licensing Act. As the Chancellor recognized, the fact that the legislature exempted attorneys-in-fact from the regulation placed on real estate brokers established that the legislature viewed real estate brokers and attorneys-in-fact as distinguishable. She noted that the key to ascertaining whether the defendants' activities fall within the confines of the attorney-in-fact exemption is discerning the distinguishing characteristics created by the legislature in order to differentiate between a real estate broker and an attorney-in-fact.

Defendants insist that the Chancellor's discernment of the differences between a real estate broker and an attorney-in-fact under Tenn. Code Ann. § 62-13-101 *et seq.* is "an unwarranted judicial revision of the Act." We disagree. In construing a statute, it is the duty of the court to give every word and phrase meaning. *United Canners, Inc. v. King*, 696 S.W.2d 525 (Tenn.1985). We must construe the statute so that no part is inoperative, superfluous, void or insignificant. *Tidwell v. Collins*, 522 S.W.2d 674 (Tenn.1975). "Statutes are not to be construed so strictly as to defeat the obvious intention of the legislature... [q]uestions involving statutory construction 'must be answered in light of reason, having in mind the object of the statute, and the mischief it aims at.' " *State v. Netto*, 486 S.W.2d 725, 728 (Tenn.1972).

The fact that the legislature carved out an exemption for attorneys-in-fact from the regulations placed on real estate brokers evinces that the legislature viewed real estate brokers and attorneys-in-fact as distinguishable. "Where, as here, the parties derive different interpretations from the statutory language, an ambiguity exists, and we must look to the entire statutory scheme in seeking to ascertain legislative intent." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1950 (citing *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994)). In the instant case, it is imperative to look at the structure of other similar provisions within the same statutory scheme in interpreting the meaning to be derived from the attorney-in-fact exemption. Tenn. Code Ann. § 62-13-104(6) is particularly helpful in this fashion.

> (6) A corporation, foreign or domestic, acting through an officer duly authorized to engage in such real estate transaction

7

> where the transaction occurs as an incident to the
> management, lease, sale or other disposition of real estate
> owned by the corporation; however, this exemption does not
> apply to a person who performs an act described in § 62-13-
> 102(3)(A) either as a vocation or for compensation, if the
> amount of the compensation is dependent upon, or directly
> related to, the value of the real estate with respect to which the
> act is performed.

This exemption is expressly premised on the understanding that such exemption does not exist when persons are performing such functions as their vocation or when such actions are performed for compensation. Turning to the definition of "broker" in Tenn. Code Ann. § 62-13-102(3)(A), the first sentence of this definition commences by stating: "Broker means any person who for a fee..." With this in mind, it is this court's opinion that the legislature did not intend to exempt those attorneys-in-fact who perform their duties as their vocation and/or for compensation from the provisions of the Licensing Act.

This conclusion is reinforced by the legislative history to this exemption. When an amendment to this particular statute was being considered, the House Commerce Committee discussed the exemption as follows:

> Shirley: If I was the, if I had the power of attorney, could I charge them $500 and not have a license?
>
> Buck: I would say that you would not.
>
> Shirley: Now, in, in effect we've abolished the real estate license then.
>
> Buck: No, because if you, if you do charge them a fee, you're not exempt. If you don't charge them a fee, you would be exempt. And that's the same way the law is now.

House Commerce Committee, February 9, 1988.

After looking at the definitions of "attorney-in-fact" and "power of attorney" as seen in *Black's Law Dictionary*, *Corpus Juris Secundum*, and *American Jurisprudence*, and after having reviewed similar statutory sources, the trial court concluded that the distinguishing factor between a real estate broker and an attorney-in-fact pertained to whether one was undertaking the actions enumerated in Tenn. Code Ann. § 62-13-102(3)(A) as a vocation or for compensation as opposed to one who was undertaking said actions ministerially as

8

an agent for the owners. We agree.

The literal language of the statute cannot be harmonized with the interpretation advanced by the defendants. In interpreting a statute, legislative intent must be determined from the plain language it contains, read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning. *See Metropolitan Government of Nashville, etc., v. Motel Systems, Inc.*, 525 S.W.2d 840, 841 (Tenn. 1975); *National Gas Distributors, Inc. v. State of Tennessee*, 804 S.W.2d 66, 67 (Tenn. 1991). It seems abundantly clear that the legislature did not intend for the attorney-in-fact exemption to be a loophole around the unequivocal requirements of the Licensing Act. Without a distinction between these two terms, the attorney-in-fact exemption would all but swallow the rule. If a real estate broker and an attorney-in-fact under the Licensing act were one and the same except for the "duly executed and recorded power of attorney," then the licensing requirements of the Act would be a farce and nothing more than a conduit allowing persons to obtain the privileges of maintaining a real estate practice without the proper licensing. Anyone could, in fact, legally bypass the licensing requirements of the Act by simply undertaking to duly execute and record a power of attorney. It would be entirely irrational for persons to bind themselves to the responsibilities, duties, sanctions, and castigations of the Licensing Act when they can practice the business of real estate by merely procuring a "duly executed and recorded power of attorney." This is not what the legislature intended.

Defendants undertake their renting and collecting of rents for the owners of these chalets and cabins as their vocation. Defendants charge the property owners a fee of 40% of the gross receipts that the defendants generate from the use of the chalets and/or cabins. Indeed, defendants' acts as attorneys-in-fact are not ministerial in nature but are, in fact, the mainstay of their livelihood. Therefore, defendants are brokers within the meaning of Tenn. Code Ann. § 62-13-102(3)(A) and do not fall within the attorney-in-fact exemption of Tenn. Code Ann. § 62-13-104(2).

9

Accordingly, we affirm the judgment of the trial court.  Costs are assessed against defendants, for which execution may issue if necessary.

_____
HIGHERS, J.

_____

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.

10